THE STATE OF OHIO, APPELLEE, v. BALL, APPELLANT.

[Cite as State v. Ball, 1 Ohio App. 2d 297.]

298

(No. 7562—Decided April 14, 1964.)

*Mr. Earl W. Allison,* prosecuting attorney, and *Mr. Jerry Weiner,* for appellee.

*Messrs. Smith, Clark & Holzapfel,* for appellant.

TROOP, J. John H. Ball, defendant in the trial court, and appellant herein, was arrested, without a warrant, on or about May 9, 1963, in the city of Whitehall, Franklin County, by police officers of the city of Columbus, and charged with a violation of Section 2905.34, Revised Code, specifically, possession of articles for criminal purposes.

The defendant was indicted by the grand jury. As indicated by language used in the true bill returned by the grand jury, it was found that the defendant:

"* * * did unlawfully and knowingly have in his possession or under his control an article or thing intended for causing an abortion, contrary to the statute in such cases made and provided against the peace and dignity of the state of Ohio."

Trial by jury followed and the defendant was found guilty as charged. Judgment of conviction was entered, based upon the verdict of the jury, and a motion for a new trial was overruled. It is from the judgment entered by the Court of Common Pleas of Franklin County that this appeal is taken.

Five assignments of error are advanced by the appellant. Summarized, they are that: The court erred in overruling the defendant's motion for a new trial; the verdict and judgment are against the weight of the evidence and contrary to law; the court erred in the admission of certain evidence over objection; there is an entire failure of proof of the essential issue, *i.e.,* that the defendant had in his possession an article or thing intended for causing an abortion; and the usual sweeping "all other errors apparent upon the record" assignment.

Counsel for appellant, in brief and oral argument, seek to

support the appeal by attacking the validity of the arrest of defendant by Columbus police officers. The six questions raised by appellant's brief indicate rather clearly the points of attack and, translated into positive language, state the propositions upon which counsels' argument rests. The first three questions involve consideration of Section 2935.04, Revised Code, as follows:

"When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained."

Subsequent sections provide what shall be done by private persons and peace officers when such arrests are made.

Counsel rather succinctly state their position as to this point, as follows:

"There is no evidence in the record that the Columbus police department had any knowledge that a felony had been committed and the record shows no basis for reasonable grounds to believe that a felony had been committed."

If the position taken by counsel is correct then the arrest of the defendant was illegal, but the allegedly illegal arrest is not, of itself, significant. The point made by the defense is, of course, that because the arrest was illegal, the search and seizure of the certain exhibits would be an unreasonable search and an illegal seizure, making exhibits, the contents of the exhibits and any testimony concerning their seizure inadmissible in evidence.

Both the testimony and the exhibits are clearly relevant, competent evidence of the crime charged. It is not incumbent upon the prosecution, in the first instance, to establish the legality of an arrest, or to show the reasonableness of a search and seizure. On the contrary, there must be evidence from which the fact of an illegal arrest and unreasonable search could be determined. In the instant case, the record shows that the Columbus police officers received information concerning the defendant from the Mansfield police department. Defense counsel elected not to make any effort whatever to determine what that information was. The record does not reveal any evidence as to the information in the hands of Columbus police

officers, obtained from Mansfield police officers or obtained by their own investigation.

There is no evidence in the record upon which to find that there was not reasonable ground to believe a felony had been committed, and that the defendant committed it. There is, therefore, no basis to find an illegal arrest or an unreasonable search. The evidence was admissible and that assignment of error is without merit.

A review of the record reveals some important facts providing background for the arrest on the morning in question. The testimony of sergeant Jerry Ryan, Columbus police officer, shows that the Mansfield, Ohio, police department contacted the Columbus police department concerning the defendant and asked that Columbus investigate the activities of the defendant. In response to the request, Columbus officers flew over the railroad depot on North High Street, at about 9:00 a.m., of the day of the arrest and spotted the car of the description furnished by Mansfield. Airplane and police car, with radio contact, followed the blue Falcon to the Howard Johnson Motel on East Main Street. Another officer testified that he followed the blue Falcon, in which defendant was riding, to the motel, and later learned that the Falcon had been driven by a Miss Niebel.

This same officer saw the defendant and Miss Niebel enter suite No. 115 at the motel and emerge 25 minutes to one-half hour later, the defendant carrying a little brown satchel, identified in the record as state's exhibit No. 2, which he had carried into the motel and the contents of which were the subject of questions directed to Dr. Warren Hicks, the answers to which are a part of the basis of this appeal.

Many of the basic elements in the instant case are so closely akin to those basic to the case of *Johnson* v. *Reddy* (1955), 163 Ohio St., 347, that rules announced in that case seem applicable here, even though this is a criminal matter and the Supreme Court case dealt with a civil suit for false arrest.

Paragraph two of the syllabus provides the rule to be respected in the instant case. It is included in a paragraph, found on page 352, in which Judge Bell notes also the background for the rule announced. The complete paragraph reads as follows:

"Since pre-Revolution days, the right of freedom from un-

lawful arrest and seizure of the person has been zealously guarded for our people. And well it should be. Yet that right must not be so enforced as to prevent those to whom we have entrusted the guarding of our safety from protecting us from the felon who would make of our communities havens of refuge. And we believe that in making an arrest without a warrant at the request of another police agency all reasonable doubts concerning the reasonableness of the information on which the arresting officer acts should be resolved in his favor.''

In the *Johnson case, supra,* the request to investigate came to local officers from a police department in a sister state. The case also involved compliance with the statute requiring that the peace officer take the person, arrested without a warrant, before a court, or make a complaint, ''without unnecessary delay,'' which was the point on which the reversal hinged. The questioned time lapse was from 3:00 p.m. of one day to 9:00 a.m. of the next day and the court said the reasonableness of the time lapse was a jury question.

In our case, the search warrant arrived before the defendant and Miss Niebel were taken from the motel. A question of compliance with Section 2935.05, Revised Code, is not raised in this appeal. Counsel argue only that there was no knowledge, or reasonable ground to believe, that a felony had been committed. On that point the *Johnson case* is clear.

Defendant in the case before us elected not to deny by his own testimony, or other evidence, the case presented by the state, and made no attempt by way of cross-examination, or otherwise, to show that the police officers had no reasonable cause to believe that a felony had been committed. Such burden rested squarely on the defense. Any doubts as to the reasonableness of the information upon which the police officers acted is resolved, therefore, in their favor. We find, from an examination of the record, no basis upon which to predicate a finding of an illegal arrest or an unreasonable search. The rule supplied by the *Johnson case, supra,* leads to the conclusion that the arrest of the defendant was a legal arrest. Admission of state's exhibit No. 1, photographs, and exhibit No. 2, the ''satchel'' or case and contents, was, therefore, proper.

Answers to the first three questions, put by appellant in his brief, resolve the matters against him. A part, however, of the

third question, concerning the admission into evidence of state's exhibit No. 4, a catheter tube, is raised also in question four, perhaps for the purpose of especial emphasis.

The case of *Geer* v. *State* (1909), 16 C. C. (N. S.), 151, deals with the trial of one accused of an abortion. A "catheter" was offered in evidence which "was shown to have been found in the room of Addie Sutter shortly after the offense is said to have been committed." The court speaks, at page 153, as follows:

"* * * This was properly admitted in evidence, for the same reason that if a person were found to be cut or slashed with a knife, and a knife was found shortly after the cutting or slashing in the room where it is charged the cutting or slashing took place, such knife might properly be admitted in evidence."

The proximity of the catheter to the scene of the crime is established in this case as much closer than that in the *Geer case, supra*. Miss Niebel testified that the defendant put a catheter in her body. Later, she testified that she was taken to Grant Hospital where she was given a shot for infection and the catheter removed. Police officer, Madeline Baker, testified that the catheter was handed to her at Grant Hospital by Dr. Mc-Cormack, and upon receiving it she attached identifying marks and retained it as evidence.

No decisions upsetting the rule in the *Geer case, supra,* have been cited or discovered. The trial court was not in error in admitting state's exhibit No. 4, the catheter, into evidence.

Appellant urges that the state's expert witness, Dr. Warren Hicks, was asked a leading question concerning state's exhibit No. 2, the case and contents, the question being improper and prejudicial. In addition to being leading, counsel for appellant argues, it asked for an opinion from the doctor involving the intent or motive of a person as to the use of the instruments. The doctor was asked first to identify articles in the case, which he did in detail, indicating the ordinary and medical uses to which they were put. When asked if he had an opinion as to the uses to which such a "combination" of articles might be put, he replied that he had. As an expert he was then permitted to answer, over objection, whether they might be used to "create an abortion." His answer was as follows:

"There is enough equipment in there if a person was to do an abortion that they would be fully equipped."

There is nothing in that answer bearing upon the motive or intention of the defendant. It leaves to the jury the sole responsibility of determining knowledge and intent under the instruction of the court, to which charge no objection was raised.

Knowledge of medical instruments and their uses is beyond the purview of a jury composed of average citizens and within the scope of a witness qualified to speak on the subject. Here the qualifications of Dr. Hicks were not questioned. The applicable rule is found in paragraph two of the syllabus of *Shepherd* v. *Midland Mutual Life Ins. Co.* (1949), 152 Ohio St., 6. It reads, in part, as follows:

"* * * a witness qualified to speak as to the subject matter involved may express an opinion as to the probability or actuality of a fact pertinent to an issue in the case, and the admission of such opinion in evidence does not constitute an invasion or usurpation of the province or function of the jury, even though such opinion is on the ultimate fact which the jury must determine."

It is noted that in the *Geer case, supra,* page 153, the court says that Dr. Spencer testified "that this instrument is one which could be and sometimes is used for the purpose of procuring an abortion." He spoke of the "catheter."

Question No. 6 deals with the inclusion in the charge of the trial court of statutory language concerning "prevention of conception," along with the statutory language relative to abortion. While the question of the trial court addressed to respective counsel at the close of its charge seems to limit objections to omissions, even so, objection was made to the charge as given. Counsel might well have made such objection at that time. The incidental mention of an extraneous matter, contained in the language of the statute, cannot be regarded as prejudicial when the general charge of the court is essentially correct and pointed squarely to the issues to be determined by the jury.

We find no error prejudicial to the appellant in the record or in the law as applied by the trial court. The five assign-

ments of error are not well taken. The judgment of the trial court is affirmed.

*Judgment affirmed.*

DUFFY, P. J., and DUFFEY, J., concur.